jms

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-40122-JAR |
| | ) | |
| JOHN HENRY BROWN, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM ORDER AND OPINION DENYING MOTION TO SUPPRESS

This matter comes before the Court on defendant John Henry Brown, Jr.'s Motion to Suppress Evidence (Doc. 12). The parties have fully briefed the motion and the Court held an evidentiary hearing on March 28, 2005. Following the hearing, the parties filed supplemental briefing. The Court has thoroughly considered the parties' briefs, the evidence, and the oral argument and is prepared to rule. For the reasons stated below, defendant's motion is denied.

### Factual Background

On May 13, 2004, Sergeant Todd Godfrey of the Junction City Police Department presented an affidavit for a search warrant to Judge Hornbaker of the Geary County District Court. The affidavit requested permission for officers to enter defendant's residence, located at 306 N. Jefferson St., Junction City, Kansas without first knocking and announcing their presence. In support of the request for a "no-knock" warrant, Godfrey noted in the affidavit that: (1) a confidential informant had twice purchased cocaine sales from defendant at this residence; (2) defendant kept the cocaine in his pants pocket or bedroom; (3) defendant's bedroom is adjacent to his bathroom; (4) defendant sold cocaine

in sandwich bag corners, which are easily handled and disposed of by flushing down the toilet; and (5) defendant had been arrested for domestic battery and driving while his license was suspended.[1] Godfrey also discussed the propensity that the drugs could be easily disposed of with Judge Hornbaker.

On the basis of this information, Judge Hornbaker issued a warrant on May 13, 2004, at 4:30 p.m. The warrant allowed officers to search for "cocaine, drug paraphernalia, packaging materials, drug proceeds, documentary evidence of drug transaction, items which will help identify persons in control of the premises, contraband, or fruit, instrumentalities or evidence of such offense." The search warrant additionally provided that "the Court further finds that the circumstances stated in the probable cause affidavit, and particular to this case, justify an exemption to the 'knock and announce' requirement governed by the Fourth Amendment."

The search warrant was executed by the Junction City Tactical Response Team at 4:23 a.m. on May 14, 2004. Godfrey testified that the tactical commander decided when to execute the warrant and that this decision was based upon public safety, as defendant's residence was located 287 feet from a school, and the element of surprise, so as to prevent the destruction of evidence. He also testified that the Junction City police department does not always request no-knock search warrants.

The Tactical Response Team entered defendant's residence using a battering ram without knocking and announcing their presence. Upon entering the residence, Godfrey immediately detected the strong odor of burning marijuana and noticed a heavy layer of smoke inside the residence. The

---

[1]Godfrey testified, however, that these arrests were not the basis for the no-knock warrant.

smoke was so heavy it was hard to see.  In the front room of the residence, Godfrey saw the defendant and a third person, Jesus DeLeon.  Both defendant and DeLeon were awake and had apparently been watching television.  On the coffee table in the front room Godfrey observed: (1) a suspected marijuana blunt; (2) marijuana blunt wraps; and (3) plastic bags.  Officers also found a shotgun under the bed in defendant's bedroom.  Defendant was charged with possessing a firearm after being previously convicted of a misdemeanor crime of violence, in violation of 18 U.S.C. § 922(g)(9).

## Discussion

Defendant moves to suppress all evidence seized from the May 14, 2004, search of his residence.  He argues that the failure of police to knock and announce their presence and purpose before breaking into his home, and the execution of the warrant at 4:23 a.m. violated the Fourth Amendment's prohibition against unreasonable searches and seizures.

**A.  "No-Knock" Search Warrant**

"State law enforcement officers are prohibited by the Fourth Amendment from conducting "unreasonable searches and seizures."'[2]  In *Wilson v. Arkansas*,[3] the Supreme Court recognized that "[a]t the time of the framing, the common law of search and seizure recognized a law enforcement officer's authority to break open the doors of a dwelling, but generally indicated that he first ought to announce his presence and authority."[4]  The Court held that the "knock and announce" rule "forms a

---

[2] *United States v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996).

[3] 514 U.S. 927 (1995).

[4] *Id.* at 929.

part of the reasonableness inquiry under the Fourth Amendment."[5]

A recognized exception to the knock and announce rule permits no-knock entries when police "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."[6]  "This standard – as opposed to a probable cause requirement – strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries."[7]

In the present case, Godfrey obtained a no-knock warrant from Judge Hornbaker.  Kansas law does not expressly allow for a no-knock warrant, and even if it so allowed, the fact that the officers obtained a warrant that authorized entry without knocking and announcing is not determinative in the Fourth Amendment reasonableness calculus.[8]  Rather, it is the duty of the Court "to determine whether the facts and circumstances of [this] particular entry justified dispensing with the knock-and-announce requirement."[9]

The government argues that exigent circumstances justified the no-knock entry into defendant's home.  Before dispensing with the knock-and-announce requirement on the basis of exigent circumstances, officers must possess particular facts that suggest that an urgent need for a no-knock

---

[5]*Id.*

[6] *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

[7]*Id*.

[8]*Estate of Fuentes v. Thomas*, 107 F. Supp. 2d 1288, 1298 (D. Kan. 2000).

[9]*See id.*

entry exists.[10] Thus, a showing of exigent circumstances beyond merely a reasonable belief that drugs and weapons would be present on the premises is required.[11] Defendant argues that the officers knew only that he was selling relatively small quantities of cocaine, such that no particular facts supporting a no-knock entry are present.

The Court finds that the following facts are relevant to the no-knock entry.  First, the affiant had reliable information that defendant was in possession of and was selling cocaine from his home.  The affidavit described, that based on recent observations of the confidential informant, defendant sold cocaine packaged in sandwich bag corners, which are easily destroyed by flushing them down the toilet.  Second, the affiant knew that defendant kept this cocaine in his pants pocket or in his bedroom.  Defendant's bedroom, significantly, was adjacent to the bathroom therefore facilitating the easy destruction of the evidence.  Third, in addition, to the information contained in the warrant application, the Tactical Response Team knew that defendant's home was only 287 feet from a school.  These facts, taken together, indicate that exigent circumstances, either preventing the destruction or evidence, or protecting the public's safety, necessitated dispensing with the knock-and-announce requirement.

*Leon Good Faith*

Even assuming, *arguendo*, that exigent circumstances were not present, suppression is inappropriate because the Tactical Response Team acted with "objective good faith" in executing the warrant within its scope, pursuant to *United States v. Leon*.[12]  In *Leon*, the Supreme Court

---

[10] *United States v. Steward*, 867 F.2d 581, 584 (10th Cir. 1989).

[11] *See United States v. Colonna*, 360 F.3d 1169, 1176 (10th Cir. 2004).

[12] 468 U.S. 897 (1984).

pronounced "that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."[13]  "The engine that drives Fourth Amendment protection is prevention and deterrence."[14]  Thus, "where the officer's conduct is objectively reasonable," that is, the officer acts with "objective good faith" in obtaining the warrant from a magistrate and in executing the warrant within its scope, "there is no police illegality and thus nothing to deter."[15]  It is the "magistrate's responsibility to determine whether the officer's allegations establish probable cause."[16]  In the ordinary case, the officer cannot be expected to question the magistrate's probable cause determination."[17]  Indeed, there is a "'presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith.'"[18]

In determining whether to apply the *Leon* exception, the:

> 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known the search was illegal despite the magistrate's authorization . . . .'  To answer this 'objectively ascertainable question,' we are to consider 'all of the circumstances,' and assume that the executing 'officers have a reasonable knowledge of what the law prohibits.'[19]

---

[13]*Id.* at 918.

[14]*United States v. McCarty,* 82 F.3d 943, 949 (10th Cir. 1996), *cert. denied,* 519 U.S. 903 (1996).

[15]*Leon,* 468 U.S. at 919-921.

[16]*Id.* at 921.

[17]*Id.*

[18]*United States v. McKneely,* 6 F.3d 1447, 1454 (10th Cir. 1993) (quotation omitted).

[19]*United States v. Dahlman,* 13 F.3d 1391, 1397 (10th Cir. 1993), *cert. denied,* 511 U.S. 1045 (1994) (quoting *United States v. Leary,* 846 F.2d 592, 607 (10th Cir. 1988) (quoting in turn *Leon,* 468 U.S. at 919)).

"[T]he reviewing court must examine 'the text of the warrant and the affidavit to ascertain whether the agents might have reasonably presumed it to be valid.'"[20]  The determination is not merely whether the affidavits contain legally sufficient facts but whether the affidavits are devoid of factual support.[21]  "Thus, 'it is only when [an officer's] reliance was wholly unwarranted that good faith is absent.'"[22]  The government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable.[23]

In this case, Godfrey's affidavit was not devoid of factual support for a no-knock warrant, nor were the facts contained therein insufficient.  Thus, the Court finds that the executing officers' reliance on the warrant, which expressly dispensed with the knock and announce requirement, was objectively reasonable.  The Court additionally rejects defendant's assertion that the good faith exception does not apply in this case.  While the good faith exception does not apply to the improper execution of a warrant, it does apply where the execution was in accordance with the terms.[24]  Here, the warrant authorized a no-knock entry, and Godfrey specifically discussed with Judge Hornbaker that the warrant application sought to exempt executing officers from the knock-and-announce requirement before the warrant was issued.  Consequently, defendant's motion to suppress premised on the no-knock entry is

---

[20]*McKneely,* 6 F.3d at 1454 (quotation omitted).

[21]*Id.* (citing *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)).

[22]*Id*. (quoting *Cardall,* 773 F.2d at 1133)).

[23]*United States v. Jackson,* 199 F. Supp. 2d 1081, 1093 (D. Kan. 2002) (citing *United States v. Cook,* 854 F.2d 371, 373 (10th Cir. 1988)).

[24]*United States v. Moland*, 996 F.2d 259, 261 (10th Cir. 1993); *United States v. Rowland*, 145 F.3d 1194, 1208 n.10 (10th Cir. 1998).

denied.

## B. Nighttime Execution

Defendant additionally contends that because the search warrant was executed at 4:23 a.m., the search of his residence was unreasonable, and violated his rights under the Fourth Amendment.

It is undisputed that this search was state, and not federal in character. "When a search is state in character, 'the warrant and affidavits need only conform to federal constitutional requirements in order for the resulting evidence to be admissible in a federal prosecution.'"[25] In conducting the Fourth Amendment inquiry, the Tenth Circuit has recognized that a nighttime search is particularly intrusive.[26] Hence, the "element of a nighttime intrusion is one element in considering the reasonableness of the search."[27] A nighttime search is not, however, per se unreasonable; the Tenth Circuit has held that a nighttime search is reasonable when there is a danger of destruction or removal of evidence, in part because such circumstances could even constitute exigent circumstances for a search without a warrant.[28]

"In reviewing a challenge to the . . . nighttime execution of a search warrant, [the Court] review[s] the execution from the perspective of reasonable officers who are legitimately concerned not

---

[25] *United States v. Morehead*, 959 F.2d 1489, 1497 (10th Cir.) (quoting *United States v. Gibbons*, 607 F.2d 1320, 1325 (10th Cir.1979) (citations omitted), *aff'd on other grounds*, 971 F.2d 1461 (10th Cir.1992) (en banc)).

[26] *United States v. Callwood,* 66 F.3d 1110, 1112-13 (10th Cir. 1995) (citing *Fludd v. United States Secret Serv*., 771 F.2d 549, 553 (D.C. Cir. 1985) (per curiam); *Gibbons*, 607 F.2d at 1326.)

[27] *Gibbons*, 607 F.2d at 1326.

[28] *United States v. Tucker*, 313 F.3d 1259, 1265 (10th Cir. 2002).

only with doing their job, but also with their safety."[29]  The burden of proving that the execution of a search warrant was reasonable rests not with defendant, but with the government.[30]

In the present case, the Court finds that the nighttime execution of the search warrant was reasonable.  The affidavit sought evidence relating to drug trafficking and drug use.  Drug evidence, particularly a powder like cocaine, is easily destroyed.[31]  In this case, the affidavit sought drugs packaged in dime-sized sandwich bag corners that the affiant knew, based on his training and experience, could be easily flushed down the toilet.  The affidavit further provided that the drugs were probably on defendant's person or in his bedroom, which was adjacent to the bathroom.  In addition, the Tactical Response Team executing the warrant knew that a school was merely 287 feet away from defendant's residence, and that, during the daytime, the school would be filled with children.  Given the totality of the circumstances, the execution of the search warrant at 4:23 a.m. did not run afoul of the Fourth Amendment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Suppress (Doc. 12) is DENIED.

IT IS SO ORDERED.

Dated this  26th   day of April 2005.

                                          S/ Julie A. Robinson
                                          Julie A. Robinson

---

[29]*Colonna*, 360 F.3d at 1176 (citing *United States v. Myers*, 106 F.3d 936, 940 (10th Cir. 1997)).

[30]*United States v. Warren*, 181 F. Supp. 2d 1232, 1242 (D. Kan. 2001) (citing *Moore*, 91 F.3d at 97).

[31]*United States v. Tavarez,* 995 F. Supp. 443, 447 (S.D.N.Y. 1998) ("[S]mall amounts of cocaine [can] be easily and quickly disposed of by a number of methods, including being flushed down the toilet, thrown out a window, or thrown into a pail of water in which they would dissolve.").

United States District Judge